# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JOSE MORALES, on behalf of | ) | |
| himself and those similarly situated, | ) | |
| NATIONAL ASSOCIATION | ) | |
| FOR THE ADVANCEMENT OF | ) | |
| COLORED PEOPLE (NAACP), as an | ) | CIVIL ACTION NO. |
| organization; GEORGIA | ) | 1:08-CV-3172 JTC |
| ASSOCIATION OF LATINO | ) | |
| ELECTED OFFICIALS (GALEO), | ) | |
| as an organization; and THE | ) | |
| CENTER FOR PAN ASIAN | ) | |
| COMMUNITY SERVICES (CPACS), | ) | |
| as an organization, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| V | ) | |
| | ) | |
| KAREN HANDEL, in her official | ) | |
| capacity as Georgia Secretary of State, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS OR IN THE ALTERNATIVE
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs filed this lawsuit less than one month before the November

4, 2008 presidential election, challenging the Georgia Secretary of State's

("Defendant" or "Secretary") voter verification process, specifically

verification of citizenship status. Plaintiffs allege that Defendants violated

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, by failing to seek preclearance before implementing this citizenship verification process. Plaintiff also alleged that Defendant's citizenship verification process violated the National Voter Registration Act ("NVRA") 42 U.S.C. § 1973gg-6, which prohibits states from systemically removing voters from the lists of eligible voters within ninety (90) days prior to the date of an election. 42 U.S.C. § 1973gg-6(c)(2)(A).

Finally, Plaintiffs amended their Complaint following the election to add a claim for relief under the Help America Vote Act of 2002, 42 U.S.C. § 15483, in which they allege that Defendant's citizenship verification process failed to provide the "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 42 U.S.C. § 15483(a)(4)(B). *See* Plaintiffs' Amended Complaint, ¶ 84.

Defendant sought preclearance of Georgia's voter verification process shortly after this lawsuit was filed. DOJ denied preclearance in a letter dated May 29, 2009. However, the Secretary has requested reconsideration of that decision. Until DOJ issues a final decision regarding the Secretary's request for preclearance, Defendant submits that there is no issue that is ripe for the Court to review. *Harris v. United States*, 564 F.3d

2

1301, 1308 (11th Cir. 2009).  Nevertheless, the Defendant will address the issues presented in Plaintiffs' Complaint, as amended.

HAVA mandates that the State establish a statewide voter registration database and that the State match voter information entered into that database against information maintained in databases maintained by the Georgia Department of Driver Services ("DDS") and/or the Social Security Administration (SSA").  42 U.S.C. § 15483(a)(5)(B).

Both HAVA and state law currently authorize and/or require the Secretary to ask an applicant whether he or she is a U.S. citizen.  42 U.S.C. § 15483(b)(4)(A)(1);[1]  42 U.S.C. § 15484; and O.C.G.A. § 21-2-220(b).  Since citizenship is a qualification for voting in Georgia, it is not an unreasonable burden to require an applicant to present evidence of citizenship in those instances when the statewide voter registration database information does not match the information entered into the DDS or SSA databases.

---

[1]    HAVA mandates that any mail-in registration form must include the question:  "Are you a citizen of the United States of America?"  42 U.S.C. §15483(b)(4)(A)(1).  There is no similar requirement under HAVA for in-person registration forms.   However, HAVA authorizes the State to impose more strict registration requirements.  42 U.S.C. § 15484.  *See also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008).

3

The Secretary of State's Office is aware of at least 25 instances in which individuals who were not U.S. citizens registered to vote in Georgia since 2005. Defendant's Exhibit 1. This evidence demonstrates the need to verify an applicant's information. The very purpose of HAVA is "to strike a balance between promoting voter access to ballots on the one hand and preventing voter impersonation fraud on the other." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1168 (11th Cir. 2008).

For these reasons, and for the reasons discussed herein below, Defendant submits that the Secretary of State's citizenship verification process was and is authorized under both federal and state law, that Plaintiffs' claims in this case are moot, and that Plaintiffs are not entitled to any relief beyond the preliminary injunction granted by the Court in October 2008.

## STATEMENT OF FACTS, PROCEDURAL HISTORY AND STATUTORY BACKGROUND

A.    *Georgia's Implementation of the HAVA Verification Process*

Prior to 2006, Georgia sought to comply with the Help America Vote Act of 2002 ("HAVA") by using social security numbers on voter registration applications. *See* 42 U.S.C. § 15483(a)(5)(D). However, after Georgia's mandatory use of social security numbers was rejected on privacy

4

grounds in *Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006), and following

entry of a consent order by the District Court, the Secretary began

implementing the verification procedures mandated by HAVA.

Specifically, in the spring of 2007, the Secretary and the

Commissioner of DDS entered into an agreement to match information in

the statewide voter registration database with information in DDS'

database, as required under 42 U.S.C. § 15483(a)(5)(B)(i).  Defendant's

Exhibit 2.  Additionally, the Commissioner of DDS entered into a data

sharing agreement with the SSA as required under 42 U.S.C.

§ 15483(a)(5)(B)(ii).  Defendant's Exhibit 3.

For any individual who applies to vote, the county registrar (or

designee) enters the applicant's information into the statewide voter

registration database.  Declaration of Janet Munda, ¶ 5 (Defendant's Exhibit

5).[2]  The following information is entered into the database:  first name, last

name, date of birth, driver's license number, last four digits of the social

security number (if provided), and whether the applicant is a citizen.  *Id.*

On a nightly basis, each applicant's file is matched against information

---

[2]    Ms. Munda's declaration was originally filed in support of
Defendant's proposed Findings of Fact and Conclusions of Law, which
were filed with the Court on October 20, 2008.  [Doc. 21].

contained in the databases maintained by the DDS and/or SSA in order to verify the accuracy of the information provided. *Id.*

If the information does not match, the registrar first checks to see if there has been any clerical error. Munda Decl., ¶ 6. *See also* O.C.G.A. § 21-2-226(d). If that is not the case, then a letter is sent to the applicant requesting additional information in order to resolve the issue of eligibility. *Id.* "Usually, the applicant submits information needed to remove his/her 'Non-Citizenship' status from the SSVRZ791 Report. A precinct card is then generated and mailed to the voter." *Id.* If the office does not receive any response, then a second letter is sent to the applicant advising of a date and time of a hearing at which time the issue of eligibility will be finally determined. *Id.* *See also* O.C.G.A. § 21-2-228.

B.    *Plaintiff Morales' Voter Registration Process*

Plaintiff Jose Morales became a naturalized U.S. citizen on November 7, 2007. Declaration of Jose Morales, ¶ 2 (Defendant's Exhibit 4).[3] Plaintiff was not a U.S. citizen at the time he applied for his Georgia driver's license in April 2006. *Id.* ¶ 6.

---

[3]    Mr. Morales' declaration was originally filed with Plaintiff's original Complaint. [Doc. 1].

Plaintiff completed an application to register to vote on September 9, 2008. *Id.*, ¶ 9; Munda Decl., ¶ 7. Upon receipt of Morales' application, the Cherokee County elections office entered Plaintiff's information into the Georgia statewide voter registration database. Munda Decl., ¶ 5.

The information was matched with information on file with either DDS or the SSA in order to determine whether Plaintiff was a U.S. Citizen. Munda Decl., ¶ 5. The results of the match between the statewide voter registration database and the DDS records indicated that Plaintiff was not a U.S. citizen. Munda Decl., ¶ 7.

Therefore, on September 19, 2008, Janet Munda, the Director of Elections and Registration for Cherokee County, mailed a letter to Morales, requesting that he provide a copy of his citizenship papers or birth certificate. Munda Decl., ¶ 7. On September 26, 2008, Plaintiff Morales went to the Cherokee County elections office and presented his passport and his naturalization certificate as proof of his citizenship. Morales Decl., ¶ 13; Munda Decl., ¶ 8.[4]

---

[4] Because the November election was imminent, Cherokee County had established a procedure to send a follow-up letter shortly after the first letter was sent. Therefore, on September 26, 2008, a second letter was sent to Plaintiff requesting that he provide proof of citizenship. Munda Decl., ¶ 9. On October 10, 2008, the Cherokee County elections office sent Plaintiff a third letter advising him that the hearing referred to in the September 26,

Approximately one week later, Plaintiff received his precinct card. Morales Decl., ¶ 15. On November 4, 2008, Plaintiff voted on a DRE (direct recording electronic) voting machine. Second Declaration of Janet Munda, ¶ 4 (Defendant's Exhibit 6). Plaintiff did not vote in the December 2, 2008 run-off election for Georgia senator. *Id*., ¶ 5.

C.    *Procedural History*

This lawsuit was filed on October 9, 2008, challenging the Defendant's voter verification and list maintenance procedures as they related to verification of citizenship status. Complaint, ¶¶ 1 and 2. [Doc. 1]. Plaintiff alleged that Defendant was required to submit its voter verification process to the Department of Justice ("DOJ") for preclearance, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. *Id*. at ¶ 48. Plaintiff also alleged that Defendant's citizenship verification process violated the NVRA by systematically removing voters from the lists of eligible voters within ninety (90) days prior to the date of an election. 42 U.S.C. § 1973gg-6(c)(2)(A).

---

2009 letter had been cancelled and that he would be permitted to vote. Munda Decl., ¶ 10. Copies of all of the letters sent by the Cherokee County elections office to Plaintiff are attached to the declaration of Janet Munda and are identified as Exhibits 1-B, 1-C, and 1-D. (The Munda declaration was identified as Exhibit 1-A) .

On October 14, 2008, the Secretary submitted Georgia's citizenship verification process to DOJ for preclearance. On October 22, 2008, a Three-Judge panel was convened to conduct a hearing on Plaintiff's motion for preliminary injunction. On October 27, 2008, the Court entered a preliminary injunction requiring Defendant to comply with certain conditions with regard to the citizenship verification process. [Doc. 36]. In its Order, the Court permitted Defendant to continue its citizenship verification process. *Id*. However, Defendant was required to send a letter to each individual identified as a non-citizen advising that, based on the data match, the records indicated that they were not a U.S. citizen and advising them how they could provide information to establish their citizenship. *Id.*

On March 10, 2009, Plaintiffs filed an amended complaint, adding three associational plaintiffs, the National Association for the Advancement of Colored People (NAACP), the Georgia Association of Latino Elected Officials (GALEO), and the Center for Pan Asian Community Services (CPASC), and also adding a claim under HAVA. Amended Complaint, ¶¶ 7 through 9, and 75. [Doc. 55].

On May 5, 2009, Georgia Governor Sonny Perdue signed into law Senate Bill 86, which provides that effective January 1, 2010, any resident

of Georgia who registers to vote must provide satisfactory evidence of citizenship at the time of registration.  O.C.G.A. § 21-2-216(g).  *See also* 2009 Ga. Laws 712.  Any individual who has registered to vote prior to that date shall be deemed to have provided satisfactory evidence of citizenship.  *Id*.  This law is subject to preclearance under Section 5 of the Voting Rights Act.

On May 29, 2009, DOJ notified the Attorney General for the State of Georgia of its objection to Georgia's voter verification program, including verification of citizenship status.[5]  Defendant's Exhibit 7.  On August 11, 2009, the Secretary submitted a request for reconsideration as to the entire voter verification process.  Defendant's Exhibit 9 (exhibits omitted).  On August 28, 2009, Plaintiffs filed a comment letter responding to Defendant's request for reconsideration.  Defendant's Exhibit 10 (exhibits omitted).

## STANDARD OF REVIEW

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  *Swierkiewicz v.*

---

[5]    At the Secretary's request, DOJ provided a clarification letter to its May 29, 2009 letter on June 16, 2009.  Defendant's Exhibit 8.

*Sorema*, 534 U.S. 506, 508, n. 1 (2002)  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In ruling on a motion to dismiss, the Court must construe all facts in the light most favorable to the Plaintiffs.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  However, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *S. Fla. Water Mgmt. Dist v Montalvo*, 84 F.3d 402, 409, n. 10 (11th Cir. 1996).

## ARGUMENT AND CITATION OF AUTHORITY

### B.      *Section 5 of the Voting Rights Act*

The State of Georgia is subject to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  *Georgia v. Ashcroft*, 539 U.S. 465, 466 (2003).  As such, the State is required to obtain preclearance from the Attorney General or the United States District Court for the District of Columbia for "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964." 42 U.S.C. § 1973c(a).  At this point in time, Defendant's request for preclearance of Georgia's voter verification process, including citizenship verification is still pending.

Because Defendant has sought reconsideration of DOJ's decision to deny preclearance to Georgia's voter verification process, Plaintiffs' claims

are not ripe for review.  "A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may

not occur at all."  *Harris v. United States*, 564 F.3d 1301, 1308 (11th Cir.

2009)(quoting *Texas v. United States*, 523 U.S. 296, 300)) 1998)).

Defendant submits that the Court should stay any final consideration of

Plaintiffs' claims pending DOJ's final determination on the Secretary's

request for preclearance.

     B.    *The Help America Vote Act of 2002*

In 2002, Congress enacted the Help America Vote Act, which

requires every state to establish a uniform computerized statewide voter

registration database.  42 U.S.C. § 15483(a)(1)(A).  In connection

therewith, each state is required "to verify the accuracy of the information

provided on applications for voter registration."  42 U.S.C.

§ 15483(a)(5)(B)(i).  HAVA also requires each state to implement

"[s]afeguards to ensure that eligible voters are not removed in error from

the official list of eligible voters."  42 U.S.C. § 15483(a)(4)(B).  "HAVA

represents Congress's attempt to strike a balance between promoting voter

access to ballots on the one hand and preventing voter impersonation fraud

on the other."  *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153,

1168 (11th Cir. 2008).  *See also Ohio Republican Party v. Brunner*, 544

F.3d 711, 717 (6th Cir. 2008)(*en banc*), *vacated and stay granted on other grounds by* ___ U.S. ___, 129 S. Ct. 5 (2008).

HAVA requires that any voter registration application must include, at a minimum, a current driver's license number or the last four numbers of the applicant's social security number.  42 U.S.C. § 15483(a)(5)(A)(i).  In any case in which an applicant does not have either a driver's license or social security number, the State is required to create a unique voter identification number.  42 U.S.C. § 15483(a)(5)(A)(ii).

HAVA also requires that all mail-in voter registration applications include the question:  "Are you a citizen of the United States of America?"  42 U.S.C. § 15483(b)(4)(A)(i).  The registration form must state that if the applicant answers "no," then the applicant not to complete the form.  42 U.S.C. § 15483(b)(4)(A)(iii).

Although HAVA mandates that each application for voter registration must include the driver's license number or social security number (if available), the statute does not specify what other personal information must be included on the application.  Thus, the qualification and registration of voter applicants has been left to the determination of the states.  42 U.S.C. § 15484 (the requirements in HAVA are "minimum requirements").  *See also Browning*, 551 F.3d at 1172 ("Nothing in

13

[HAVA] state or suggests that Congress intended to alter state registration requirements, . . .").  Georgia law requires that an applicant be a U.S. citizen and further requires that "the person authorized to offer registration shall inquire as to whether the individual seeking registration is a citizen of the United States."  O.C.G.A. § 21-2-220(b).  *See also* O.C.G.A. § 21-2-216(a)(2).

> C.   *Federal and State Laws Governing U.S. Citizenship As a Prerequisite to Eligibility to Vote*

Both federal and Georgia law require that a person must be a U.S. States in order to be eligible to vote.  U.S. Const., Amdt. 15, § 1; Ga. Const. Art. II, Sec. I, Para. II. *See also* O.C.G.A. § 21-2-216(a)(2).

At least three other states, Arizona, Virginia, and New Hampshire, have enacted laws that require an applicant to present proof of citizenship as part of the voter registration process.  *See* A.R.S. §§ 16-121-01, 16-152 and 16-166; Va. Code Ann. 42.2-410.1 and 24.2-427; and N.H. Rev. Stat. Ann. § 654.12.[6]

---

[6]    Both Arizona and Virginia are Section 5 covered jurisdictions and therefore were required to obtain preclearance of their laws requiring proof of citizenship.

D.   *Georgia Election Laws*

Any person who wishes to register to vote in Georgia may do so by completing an application at the county election office in which the person resides, by mail-in post card application, by applying through the Georgia Department of Driver Services, or at certain specially designated Georgia state agencies.  O.C.G.A. § 21-2-220(a).  *See also* 42 U.S.C. § 15483(b); 42 U.S.C. § 1973gg-4; and O.C.G.A. §§ 21-2-222; 21-2-223.

Georgia law also requires as a condition of qualifying to vote that an applicant must be a U.S. citizen.  O.C.G.A. §§ 21-2-216(a)(2): 21-2-220(b).  Pursuant to Georgia law, the county board of registrars has the right and duty to examine the qualifications of any applicant or elector in the county.  O.C.G.A. § 21-2-228.

When submitting an application to vote in Georgia, an applicant must also present valid identification, as provided under O.C.G.A. § 21-2-417.  *See also* 42 U.S.C. § 42 U.S.C. § 15483(b)(3).  Georgia law contains the necessary "safeguards" contemplated in both the NVRA and HAVA to ensure that any voter applicant has a reasonable opportunity to resolve any question regarding eligibility.  O.C.G.A. § 21-2-226(d) provides that in any case in which a question arises regarding an applicant's eligibility, the registrar shall send a letter to the applicant to request additional

15

information.  *See also* Morales Decl., ¶ 10; Munda Decl., ¶ 7.  In most instances, this resolves any questions raised based on the data match.  *See* Munda Decl., ¶ 6.  In any case in which the initial letter inquiry fails to resolve the question regarding eligibility, the case must be scheduled for a hearing, and the applicant provided notice and an opportunity to be heard, before a final determination is made regarding the applicant's eligibility.  O.C.G.A. § 21-2-228.  This statutory scheme strikes an appropriate balance between "promoting voter access to ballots on the one hand and preventing voter impersonation fraud on the other."  *Browning,* 522 F.3d at 1168.[7]

> E.    *Georgia's Citizenship Verification Procedure Did Not and Does Not Have the Purpose or Effect of Denying Or Abridging the Right to Vote On Account of Race, Color Or Membership In a Language Minority Group*

---

[7]    In her request for reconsideration, the Secretary has proposed a revised verification process in which only applicants who apply by mail would be subject to the HAVA verification process.  This would substantially reduce the number of applicants subject to HAVA verification.  The reasoning for this change is that in-person applicants are required to present one of the HAVA mandated forms of ID.  42 U.S.C. § 15483(b)(3).

In any case in which a mail-in application resulted in a non-match, the applicant would receive written notification from the county registrar of the reason for the non-match, and an opportunity to correct or amend the discrepancy.  If the applicant did not respond to the county registrar's inquiry within thirty (30) days, the application would be denied.  O.C.G.A. § 21-2-220.

In its objection letter, DOJ raised two primary objections to the Secretary's voter verification process:  1) the burden to the applicant; and 2) the lack of accuracy in the matching process.  The Secretary has sought reconsideration because the State disagrees with DOJ's findings on both of these point.

First, DOJ found that the State's voter verification process placed a "substantial" burden on racial or language minority applicants.  In support of this finding, DOJ, citing O.C.G.A. § 21-2-228, said that applicants could be required to appear at a hearing with only three days notice in order to resolve any questions regarding their eligibility.  *See* Defendant's Exhibit 7 at 3.  DOJ overlooked the fact that Georgia law requires every county registrar to first send an applicant written notice of the reasons for ineligibility and an opportunity to resolve the issue before any hearing is scheduled.  O.C.G.A. § 21-2-226(d).  *See also* Munda Decl., ¶ 6.

Second, DOJ questioned the accuracy of the results of voter verification process.  "Our analysis shows that the state's process does not produce accurate and reliable information and that thousands of citizens who are in fact eligible to vote under Georgia law have been flagged."  Defendant's Exhibit 7 at 3.  DOJ concluded that "[t]he impact of these

errors fall disproportionately on minority voters." *Id.* at 4.  Defendant

submits that the evidence does not support DOJ's conclusion.

DOJ's objection letter includes a brief discussion of the "R-2" letter,

which contains the list of all applicants who are identified as "non-citizens"

based on the HAVA matching process.  DOJ found that the difference

between the number of white voters who appeared on the "R-2" report

versus African American, Asians and Hispanic voters was "statistically

significant."  Defendant's Exhibit 7 at 4.  These numbers cannot be

statistically significant when the only thing that they measure is the number

of applicants whose applications were "matched" and/or "verified."

Georgia's voter verification process requires that each applicant

provide his name, date of birth, driver's license number, last four digits of

the social security number and citizenship status.  For each applicant, this

information is entered into the statewide voter registration database and

then "matched" against the DDS and SSA databases.  Regardless of what

percentage of any group of minority applicants appeared on the "R2" report,

the report shows nothing more than the number of individuals whose data

did not match between the two databases.

Furthermore, even if there was some basis for DOJ's finding that the

Secretary's voter verification process had a high error rate, a finding that

the Secretary also disputes, such a finding does not give rise to a legal claim under Section 5 of the Voting Rights Act or any of the other laws asserted by Plaintiffs in their Complaint, as amended. The Secretary submits that DOJ failed to articulate how Georgia's voter verification process is discriminatory in purpose or effect.

The Eleventh Circuit's decision in *Browning* supports the Secretary's right to require an applicant to present proof of citizenship in those instances in which a non-match occurs. In *Browning*, the plaintiffs were challenging Florida's statute implementing the HAVA verification process. Florida's law requires each applicant to disclose his name, home address, date of birth, driver's license number or last four digits of the social security number. 522 F.3d at 1156. In Florida, as in Georgia, an applicant must be a U.S. citizen in order to be eligible to vote. 522 F.3d at 1156. However, Florida did not include citizenship as part of its one of its criteria for HAVA verification.

Nonetheless, its was the HAVA matching process that was at the "center of [the] controversy" in the *Browning* case. 522 F.3d at 1156. Plaintiffs argued that the purpose and intent of HAVA was for the Secretary of State to "match" the information between the statewide voter registration database and the DDS and SSA databases, but that Congress did not intend

19

for states to use that information in order to "verify" that information in order to determine voter eligibility.  522 F.3d at 1168-69.  The Eleventh Circuit rejected plaintiffs' argument.

In so doing, the court noted:  "[n]othing in [HAVA] states or suggests that Congress intended to alter state registration requirements."  522 F.3d at 1169.  Indeed, one of the expressly stated purposes of HAVA is "to verify the accuracy of the information provided on applications for voter registration."  42 U.S.C. § 15483(a)(5)(B)(i).  Thus, it would be contrary to the stated purpose of HAVA to interpret the statute to mean that all that Congress intended was for the State to simply match the information between the databases and to leave it at that.

The Sixth Circuit reached a similar conclusion in the *Brunner* case.  In *Brunner*, 544 F.3d at 715, the plaintiffs sought to compel the Ohio Secretary of State to release to all county registrars the results of all matches between the statewide voter registration database and that state's department of motor vehicle's database and the SSA's database.  Prior to the commencement of that lawsuit, the Secretary of State had been complying with the matching requirements set forth in HAVA but had failed to provide any of the results of the matching process to county registrars.

Based on the fact that the 2008 presidential election was imminent, plaintiffs sought injunctive relief in the form an order requiring the Secretary of State to make this information available to county boards of election. *Id.* at 714-15. The district court entered a temporary restraining order ("TRO") directing the Secretary of State to ensure that "HAVA's matching requirements are not rendered meaningless" and to provide lists of mismatches to the county boards of elections. *Id*. at 715.

On appeal, the Sixth Circuit, sitting *en banc*, affirmed the district court's decision requiring the Secretary of State to provide county election officials with information regarding all applicants whose information did not match based on the HAVA verification process. 544 F.3d at 721. The Secretary filed a petition for certiorari to the Supreme Court, which vacated the Sixth Circuit's decision and the TRO. In doing so, however, the Court said that it was: "express[ing] no opinion on the question whether HAVA is being properly implemented." Rather, the Court granted the Secretary's request for a stay of the TRO based on its conclusion that the plaintiffs were not likely to prevail on the issue of whether a private party may bring a claim under Section 303 of HAVA. *Brunner*, 129 S.Ct. at 6 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2001)).

In Georgia, the Secretary matches applicants using their first name, last name, date of birth, driver's license number, the lasts four digits of the social security number, and citizenship status.  Munda Decl., ¶ 5.  The fact that a non-match occurs between the two databases does not result in the denial of an application.  Rather, if a non-match occurs, the county registrar sends a letter to the applicant notifying her of the reason for ineligibility and requesting information.  O.C.G.A. § 21-2-220(d).  With regard to citizenship, county registrars request that applicants provide them with copies of records establishing their U.S. citizenship.  Munda Decl., ¶ 6.  If no response is received to the letter requesting information, then a second letter is sent notifying the applicant of the date and time at which a hearing will be held regarding the applicant's eligibility.  O.C.G.A. § 21-2-228.  *See also* Munda Decl., ¶ 6.

Prior to HAVA, Congress passed the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-6.  That law provides that a registrant's name shall not be removed from the official list of eligible voters except at the request of the registrant, based on a criminal conviction or mental incapacity, or the registrant's death.  42 U.S.C. § 1973gg-6(a).

The NVRA further provides:

> A State shall complete, not later than 90 days prior
> to the date of a primary or general election for
> Federal office, any program the purpose of which
> is to systematically remove the names of ineligible
> voters from the official lists of eligible voters.

42 U.S.C. § 1973gg-6(c)(2)(A).  Plaintiffs allege that Defendant's

"application of the citizenship verification procedures to registered voters

and removal of such registered voters within 90 days of a federal election

violates" the NVRA.  Amended Complaint, ¶ 73.  [Doc. 55].

Plaintiffs' claim under the NVRA is subject to dismissal since there

is no evidence in this case that there were any "systemic" efforts by the

Secretary of State to remove voters from the official lists of eligible voters

within ninety (90) days prior to the election.

As Defendant noted initially, Plaintiffs' claims in this case are not

ripe, since the Secretary's voter verification process is still under

submission with DOJ.  However, Defendant submits that the facts in this

case demonstrate that Secretary's voter verification process should be

precleared and that Plaintiffs are not entitled to any relief under Section 5,

HAVA or the NVRA.

Defendant submits that under both federal and state law the Secretary

of State was authorized to request additional information from those

applicant who were identified as "non-citizens" based on the data match between the statewide voter registration database and the DDS and SSA databases. Plaintiffs have not, and cannot show, that this request for information constitutes an unreasonable burden upon voter applicants, particularly based on the evidence that non-citizens have and continue to register to vote in Georgia. Defendant's Exhibit 1.

Furthermore, based on the fact that Georgia law will be amended effective January 1, 2010 to provide that all new voter applicants must provide satisfactory evidence of citizenship, Defendant submits that Plaintiffs' claims are moot. Therefore, Plaintiffs' claims for any relief beyond the preliminary injunction granted on October 27, 2008 should be denied.

## **CONCLUSION**

For the reasons set forth herein above, Defendant respectfully submits that the Court should grant Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment.

Respectfully submitted,

THURBERT E. BAKER      033887
Attorney General

DENNIS R. DUNN          234098
Deputy Attorney General

STEFAN RITTER            606950
Senior Assistant Attorney General

 /s/Julia B. Anderson_____
JULIA B. ANDERSON      017560
Senior Assistant Attorney General
Attorneys for Defendant

40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 463-3630
FAX (404) 657-9932
janderson@law.ga.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed the

within and foregoing **DEFENDANT'S BRIEF IN SUPPORT OF**

**MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF

system, which will send notification of such filing to all parties to this

matter via electronic notification or otherwise:

> Elise Sandra Shore
> Mexican American Legal Defense and
> Educational Fund
> 34 Peachtree St. NW, Suite # 2500
> Atlanta, GA 30303
> eshore@MALDEF.org
>
> Laughlin McDonald
> Meredith Bell-Platts
> ACLU VOTING RIGHTS PROJECT
> 230 Peachtree Street, NW
> Suite 1440
> Atlanta, GA 30303
> lmcdonald@aclu.org
> mbell@aclu.org
>
> Brian Spears
> Law Office of Brian Spears
> 1126 Ponce de Leon Ave., NE
> Atlanta, GA 30306
> bspears@mindspring.com

Jon Greenbaum
Robert A. Kengle
Mark A. Posner
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, NW
Suite 400
Washington DC 20005
jgreenbaum@lawyerscommittee.org
bkengle@lawyerscommittee.org
mposner@lawyerscommittee.org

Jason S. Pielemeier
Young K. Lee
919 Third Avenue
New York, NY  10022
pielemeier@debevoise.com
yklee@debevoise.com


This 4th day of September 2009.

/s/ Julia B. Anderson
JULIA B. ANDERSON
Senior Assistant Attorney General